MAINE SUPREME JUDICIAL COURT                               Reporter of Decisions
Decision:     2026 ME 72
Docket:       Cum-26-112
Submitted
  On Briefs:  May 20, 2026
Decided:      July 28, 2026

Panel:        STANFILL, C.J., and CONNORS, LAWRENCE, and TAUB, JJ, and HUMPHREY, A.R.J.

# NEILS POINT, LLC

v.

# JOSEPH GRADY et al.

TAUB, J.

[¶1]  Joseph and Laura Grady appeal from an order of the Superior Court (Cumberland County, *McElwee, J.*) confirming an arbitration award that found the Gradys in breach of their lease with Neils Point, LLC, and denying the Gradys' motion to vacate the award.  The Gradys argue that the lease was for a residential tenancy, and as such the lease's provision requiring arbitration of disputes was void.  They also argue that the arbitrator exceeded his powers in interpreting the lease.  We conclude that the Gradys' participation in the arbitration proceeding without objection precludes them from challenging the arbitration clause and that a rational construction of the lease could support the arbitrator's interpretation.  Accordingly, we affirm.

## I. BACKGROUND

### A. Underlying Facts

[¶2] Neils Point owns Two Coves Farm in Harpswell. The farm is approximately one hundred acres and contains a farmhouse and other farm buildings. In 2008, Neils Point granted to the Maine Farmland Trust an agricultural conservation easement, *see* 33 M.R.S. §§ 476 to 479-C (2026). In 2009, Neils Point leased the property to the Gradys for use as a farm for an initial term of five years. In 2012, the parties extended the lease for an additional five years. In 2017, they renegotiated portions of the lease and extended it for an additional twenty-five years. The Gradys lived on the farm throughout the term of the lease.

[¶3] The 2017 lease, the operative contract here, is titled "COMMERCIAL AGRICULTURAL LEASE AGREEMENT." The first paragraph states: "THIS IS A COMMERCIAL AGRICULTURAL LEASE, AND NOT A RESIDENTIAL RENTAL AGREEMENT, notwithstanding that the leased premises includes structures for farm housing." Rent was ten percent of the farm's annual net proceeds and was due on a yearly basis. Paragraph 22.2 of the lease required that disputes be "submitted to arbitration under the Commercial Arbitration Rules of the American Arbitration Association."

## B. Procedural Background

[¶4]  In September 2024, Neils Point filed a demand for arbitration, alleging that the Gradys were in breach of the lease for various reasons, including not properly calculating and paying rent and failing to make sufficient use of the farm as "productive cropland."[1]  In their answer, the Gradys admitted that the dispute was subject to arbitration.  They also made their own "written request for arbitration per section 22.2 of the lease."

[¶5] The arbitration hearing took place over three days in July 2025.  The Gradys participated in the arbitration without objection.  They never argued that the lease was residential rather than commercial, that the arbitration provision was void, or that disputes arising out of the lease were not arbitrable.

[¶6] In October 2025, the arbitrator issued a written decision concluding that the Gradys breached the 2017 lease by not making proper and timely rent payments and by failing to grow productive crops.[2]  The arbitrator calculated damages for the Gradys' breach of contract by determining the farm's average

---

[1] Neils Point also made claims for unjust enrichment, declaratory judgment, and common law and statutory trespass, but the arbitrator denied these claims, and they are not at issue here.

[2] The arbitrator found that the Gradys improperly deducted operational expenses from the annual proceeds and "knowingly inflated their operational expenses by treating household and personal expenses as business expenses."  The arbitrator further found that the Gradys did not pay rent on time from 2018 to 2022 and paid no rent at all in 2023 and 2024.  Although Neils Point argued that the Gradys had also failed to properly and timely pay rent in 2017, the arbitrator concluded that 2017 fell outside the applicable six-year statute of limitations and did not award damages for that year.

4

annual net revenue, calculating ten percent of that amount over the eight years at issue, and subtracting the rental amounts that the Gradys did pay during those years. This resulted in a total damages award of $124,175.10. The arbitrator ordered the Gradys to vacate the farm by December 31, 2025.

[¶7] On November 4, 2025, Neils Point filed in the Superior Court an application to confirm the arbitration award. *See* 14 M.R.S. § 5937 (2026). On December 30, 2025, the Gradys moved to vacate the award, arguing for the first time that the arbitration provision was void because the lease was for a residential tenancy and, as residential tenants, the Gradys had a right to have a court resolve disputes arising out of the lease. They also argued that the arbitrator exceeded his authority in finding that the lease required the Gradys to grow crops.

[¶8] The court concluded that the Gradys waived their argument that the arbitration clause was void because they failed to raise it during the arbitration proceeding. The court also concluded that the arbitrator's interpretation of the lease was rational. The court confirmed the award and denied the Gradys' motion to vacate. The Gradys timely appealed. *See* M.R. App. P. 2B(c)(1).

## II. DISCUSSION

**A.** **Because the Gradys participated in the arbitration proceeding without objection, they have waived their right to challenge the validity of the arbitration provision.**

[¶9]  The Gradys argue that the lease was for a residential tenancy and that, under Maine law, arbitration provisions in residential leases are void.[3] The Gradys argue that disputes arising out of residential leases must instead be resolved through the judicial process of forcible entry and detainer, *see* 14 M.R.S. §§ 6000-to 6016-A (2026).

[¶10]  There is no need for us to reach the question of whether the lease was residential and, if it was, whether arbitration provisions in residential leases are void.  Even if the arbitration provision in this lease were void, the Gradys, having participated in the arbitration without objection, would have waived their right to challenge the lease's arbitrability.

[¶11]  "We will uphold the court's confirmation of an arbitration award unless the court was compelled to vacate the award."  *Roosa v. Tillotson*, 1997 ME 121, ¶ 2, 695 A.2d 1196.  The Maine Uniform Arbitration Act provides that "a provision in a written contract to submit to arbitration any controversy

---

[3]  The Gradys cite 14 M.R.S. §§ 6017(4), 6030(1), and 6036 (2026) in support of their argument that arbitration clauses in residential leases are void.  Because we do not reach the issue of whether these statutes apply to the lease at issue, we do not address the question of whether these statutes support the Gradys' argument.

thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract." 14 M.R.S. § 5927 (2026). Maine therefore has a "broad presumption favoring substantive arbitrability." *Macomber v. MacQuinn-Tweedie*, 2003 ME 121, ¶ 13, 834 A.2d 131 (quotation marks omitted). Review for substantive arbitrability considers "whether the parties intended to submit [the] dispute to arbitration." *V.I.P., Inc. v. First Tree Dev. Ltd. Liab. Co.*, 2001 ME 73, ¶ 3, 770 A.2d 95. Doubts as to whether a dispute is arbitrable "should be resolved in favor of coverage." *Westbrook Sch. Comm. v. Westbrook Tchrs. Ass'n*, 404 A.2d 204, 208 (Me. 1979) (quotation marks omitted).

[¶12] "The question of substantive arbitrability may be raised at either of two junctures in the arbitration process." *Id.* at 207. First, a party may bring a motion to compel or stay arbitration before or during the arbitration process. 14 M.R.S. § 5928(1), (2) (2026). Second, after the arbitration award has been issued, a party may bring a motion to vacate the award if "[t]here was no arbitration agreement" and "the party [seeking vacatur] did not participate in the arbitration hearing without raising the objection." 14 M.R.S. § 5938(1)(E) (2026). "The application to stay and the application to vacate are the exclusive

avenues for challenging the substantive arbitrability of a dispute." *Anderson v. Banks*, 2012 ME 6, ¶ 14, 37 A.3d 915.

[¶13]  The Gradys did not file a motion to stay arbitration before or during the arbitration process.  Although they did file a motion to vacate the award, they could not use that avenue to challenge arbitrability because they participated in the arbitration without raising an objection to arbitrability. 14 M.R.S. § 5938(1)(E).  Indeed, when Neils Point served its arbitration demand, the Gradys admitted that the dispute was arbitrable and made their own demand for arbitration.  Having fully and voluntarily participated in the arbitration process, the Gradys have no basis to request court vacatur of the award.

[¶14]  Application of general principles of waiver yields the same result. "Waiver is a voluntary or intentional relinquishment of a known right and may be inferred from the acts of the waiving party." *Blue Star Corp. v. CKF Props. LLC*, 2009 ME 101, ¶ 26, 980 A.2d 1270 (quotation marks omitted).  Even if the Gradys had had the right to have disputes arising out of the lease resolved in court, they would have waived that right by participating in the arbitration proceeding without objection.  *See id.* (stating that a right is deemed waived

when "a party in knowing possession of a right acts inconsistently with the right").

[¶15] The Gradys argue that they could not waive their right to judicial resolution of disputes arising out of the lease because 14 M.R.S. § 6030(1) (2026) prohibits landlords from requiring tenants entering into leases for dwelling units to agree to provisions that "ha[ve] the effect of waiving" certain tenant rights. Here, though, the waiver was more than just signing a lease with an arbitration provision. The Gradys, when presented with an arbitration demand, admitted that the dispute was arbitrable, made their own arbitration demand, and participated in the arbitration proceedings without objection. They did not dispute arbitrability until after they received the arbitrator's adverse decision. Even if section 6030(1) applied to the lease in this case and prohibited Neils Point from including an arbitration provision in the lease (an issue we do not decide), the Gradys have waived their right to challenge arbitrability through their subsequent conduct. *See Orthopedic Physical Therapy Ctr., P.A. v. Sports Therapy Ctrs., Ltd.*, 621 A.2d 402, 403 (Me. 1993) ("The parties to an agreement can always consent to arbitration as a means of settling their disputes.").[4]

---

[4] The Gradys note that in *N. Sch. Congregate Hous. v. Merrithew*, 558 A.2d 1189 (Me. 1989), we held that the Maine Constitution guarantees tenants the right to a jury trial in actions for forcible

**B.      The arbitrator did not exceed his powers by interpreting the lease to require the Gradys to grow productive crops on the farm.**

[¶16]   As an alternative basis for vacating the arbitration award, the Gradys argue that the arbitrator exceeded his powers in finding that the Gradys breached the lease by failing to "actively plant and grow productive crops" on the farm.  The Gradys contend that the lease imposed no such obligation.

[¶17]   Under section 5938(1)(C), a court "shall" vacate an award when "[t]he arbitrators exceeded their powers."  "The standard for showing that an arbitrator exceeded his powers is an extremely narrow one in large part because the parties have bargained for the arbitrator's construction of the contract at issue." *Xpress Nat. Gas, LLC v. Woodland Pulp, LLC*, 2017 ME 106, ¶ 3, 162 A.3d 832 (quotation marks omitted).  Thus, we "resolve any doubts in favor of the arbitrator's authority and will uphold the arbitration award—even if it contains errors of law or fact—if *any* rational construction of the agreement

---

entry and detainer.  *See* Me. Const. art. I, § 20.  But the right to a jury trial is waivable.  *See* M.R. Civ. P. 38(d).  By participating without objection in the arbitration, the Gradys waived any right to a jury trial.

The Gradys also argue that the arbitration provision was void, and therefore the arbitrator did not have "subject matter jurisdiction" over the dispute.  It is true that the subject matter jurisdiction of *courts* is not waivable and can be raised as a defense at any time. *See Monteith v. Monteith*, 2021 ME 40, ¶ 22, 255 A.3d 1030.  In contrast to the subject matter jurisdiction of courts, however, 14 M.R.S. § 5938(1)(E) is clear that the absence of an arbitration agreement provides no basis for a party to move to vacate an arbitration award if the party participated in the proceeding without raising an objection.  Therefore, to the extent that the absence of a valid arbitration agreement means that the arbitral tribunal does not have "subject matter jurisdiction" over the dispute, the issue is waived when a party participates in an arbitration without objection, as the Gradys did here.

*could* support the arbitrator's interpretation." *Id.* (alteration and quotation marks omitted).

[¶18] In concluding that the lease required the Gradys to grow crops, the arbitrator relied in part on the conservation easement, which was expressly incorporated into the lease. The easement stated that its intent was to "protect [the] farm . . . so that it will always be available for its traditional *use as a productive cropland*, open fields and forest." (Emphasis added.) The Gradys were required to comply with the easement's terms, and the easement controlled in the event of a conflict between the lease and the easement. One of the stated purposes of the lease was for the Gradys to "maintain[] a diversified farming operation." The arbitrator also concluded, based on the evidence presented at the arbitration hearing, that "[u]se of the Farm as productive cropland was a central part of the working relationship between the parties." In light of the language of the contract and the findings by the arbitrator, we conclude that the arbitrator rationally construed the lease and did not exceed his powers.[5]

---

[5] Even if the arbitrator had exceeded his powers in interpreting the lease to require the Gradys to grow commercial crops, the result would be the same. The Gradys' failure to make proper and timely rent payments was an independent basis for the arbitrator's finding that the Gradys breached the lease, one which the Gradys do not appeal. The arbitrator calculated damages based on the difference between the amounts the Gradys owed in rent and the amounts they paid. The arbitrator did not award any damages based on the Gradys' failure to grow productive crops.

The entry is:

Judgment affirmed.

_____

Regan A. Sweeney, Esq., Law Offices of Regan A. Sweeney, Portland, and J. Spencer Hoffman, Esq., Beacon Law PLLC, Kingston, New York, for appellants Joseph Grady and Laura Grady

Thimi R. Mina, Esq., and Alfred C. Frawley IV, Esq., McCloskey, Mina, Cunniff & Frawley, LLC, Portland, for appellee Neils Point, LLC

Cumberland County Superior Court docket number CV-2025-381
FOR CLERK REFERENCE ONLY